UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DCM LIMITED PARTNERSHIP,
d/b/a DCM Limited, a British Virgin
Islands Limited Partnership,

        Plaintiff,

                                      Case number 07-11846
v.                                        Honorable Julian Abele Cook, Jr.

STEVE WANG, MIDWEST AIR TECHNOLOGIES,
INC., an Illinois corporation, and MAT AUTOMOTIVE,
INC., an Illinois corporation,

        Defendants.


<u>ORDER</u>

        The Plaintiff, DCM Limited Partnership, d/b/a DCM Limited ("DCM"), filed a complaint in

the Washtenaw County Circuit Court of Michigan, in which it asserted a variety of claims (i.e., breach

of contract, quantum meruit and unjust enrichment) against the Defendants, Steve Wang, Midwest Air

Technologies, Inc. and MAT Automotive, Inc., all of which are based on their alleged failure or

refusal to repay a three million dollar promissory note ("Note"). The Defendants removed this matter

to federal court on April 27, 2007.

        On December 12, 2007, the DCM filed a motion for the entry of a summary judgment on the

basis of its breach of contract claim. The Defendants filed a responsive pleading which expressed its

opposition to the DCM's application for dispositive relief and, at the same time, submitted its own

motion for summary judgment under Fed. R. Civ. P. 56. Both dispositive motions are now under

review by the Court for a decision.

I.

DCM is a limited partnership which was chartered in the British Virgin Islands and currently conducts its business in Ann Arbor, Michigan. This limited partnership was formed as a holding company to oversee the liquidation of the D'Long America Corporation ("D'Long America") which ceased to operate as a business entity in 2001. According to the DCM, one of the Defendants, Steve Wang, is an Illinois citizen who served as an agent of the two other Defendants, Midwest Air and MAT Automotive, during all of the times that are relevant to this proceeding. According to the complaint, these two Defendants have been and are now charted as corporate entities by the State of Illinois.

In this case, the DCM asserts that Wang sought to secure a loan from the D'Long America during the later months of 2000 to support the purchase of Eurac Holdings Limited ("Eurac Holding"), a United Kingdom automotive parts manufacturer. The D'Long America confirmed its ability to invest the funds on Wang's behalf by sending a letter of support to a third party on January 15, 2001.[1] On May 24, 2001, the D'Long America (acting on behalf of the DCM) wired three million dollars to its own holding agent, Ever Nice Far East Limited, in Hong Kong, China.

Ultimately, the sought-after loan of three million dollars was apparently transmitted by Ever Nice presumably on the instructions by the Defendants. The transfer of these monies was effectuated

---

[1]An examination of the DCM's pleadings appear to be contradictory as to whether it agreed to loan the requested three million dollars to Wang or if the D'Long America corporation extended the loan to him on behalf of the DCM. As an example, the DCM indicates on pages 1-2 in its motion for a summary judgment that (1) Wang approached the D'Long America corporation about the loan on January 15, 2001, and (2) the D'Long America corporation was the entity which ultimately issued the funds to him approximately four months later (May 24, 2001). However, a review of the First Amended Complaint contains an assertion that on May 24, 2001, the DCM "agreed to lend, and did lend the amount of $3,000,00.00" to all three of the Defendants for the purchase of Eurac Holdings Ltd. *First Amended Complaint* at ¶ 9. In its following paragraph, there is an allegation that the D'Long America corporation wire transferred three million dollars on May 24, 2001 to the DCM's holding company and agent, Ever Nice Far East Limited, through the HSBC Bank in Hong Kong, China.

through a series of transactions which originated with the D'Long America's account at the Comerica Bank in Michigan and ended with the Ever Nice's accounts with the HSBC Banks in New York and Hong Kong, China.

One week later, Wang, after meeting with several people,[2] signed a Note for three million dollars at six percent interest plus collection costs. The Note, after being given in exchange "for value received," designated Wang as "the Maker" and the Payee as "DCM Limited, an entity to be formed."[3] The Note, which stated that it was "due and payable immediately upon demand," was signed by Tom Shao as a witness.

In the complaint, the DCM asserts that it became the assignee of the Note from the D'Long America in December of 2005. Since that time, the DCM maintains that it has made several demands upon the Defendants to satisfy the principal and interest due under the Note, all of which have been unsuccessful.

In their response, the Defendants deny that Wang ever received any loan from the DCM, the D'Long America or Ever Nice. Rather, it is their joint contention that Wang received the three million dollar loan from Tang Wan Xin, who is currently detained in a Chinese jail and is commonly known in the United States as Peter Tang. Furthermore, it is their collective position that Tang was repaid in full in August of 2005. *Defendants' Motion for Summary Judgment at 5.*

---

[2] In its brief, the DCM proclaims that Wang met with five individuals (Tom Shao, Peter Tang, Wayne Smith, Mark Waters and Tom Hatch) in Birmingham, Michigan when he executed the Note. *DCM's Brief at 2.* However, the Court notes that (1) paragraph 14 of the First Amended Complaint states that this meeting took place in Bingham Farms, Michigan, and (2) the face of the Note makes reference to Lincolnshire, Illinois, USA.

[3] The parties agree that the DCM did not exist as an official limited partnership in the British Virgin Islands until June 27, 2001 - approximately one month after the Note was signed.

## II

In support of its motion, the DCM urges the Court to grant a summary judgment in its favor on the breach of contract claim because Wang (1) has acknowledged his receipt of the monies that were referenced in the Note; (2) has not disputed the validity of his signature on the Note; and (3) now refuses to satisfy his contractual obligations. The Defendants respond by arguing that (1) the Note is unenforceable because it is ambiguous in its language, and (2) the DCM's limited partnership did not exist at the time when Wang allegedly received the loan.

In the Defendants' summary judgment motion, they allege that all three of the claims by the DCM should fail as a matter of law for several reasons. Initially, they submit that the DCM's breach of contract action cannot survive because the Note (1) is not supported by adequate consideration, and (2) was fully satisfied when full payment of the obligation was made to Tang. Next, the Defendants argue that the currently pending claims by the DCM for quantum meruit and unjust enrichment must fail because no services of any value were ever provided to Wang. Finally, it is their contention that the DCM cannot proceed against the corporate defendants because none of them incurred any obligations under the Note.

## III.

In 1986, the Supreme Court opined that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). At the same time, the language within Federal Rule of Civil Procedure 56(c) indicates that a motion for a summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." The burden is on the movant to demonstrate the absence of a genuine issue of a material fact. *See, Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; see, *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir., 1991); *Bender v. Southland Corp*., 749 F.2d 1205, 1210-11 (6th Cir. 1984). Thus, it is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be entered if (1) the submitted evidence in support of the dispositive motion clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence that is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively in order to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). Importantly, it should be noted that the mere presentation of a scintilla of supporting evidence is insufficient to offset an otherwise sufficiently submitted request for dispositive relief . *See Anderson*, *477 U.S. at 252*, quoted in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

An aggrieved party in those cases which involve negotiable instruments need not prove all of the essential elements of a breach of contract. *Resolution Trust Corp. v. Starkey,* 41 F.3d 1018, 1023 (5th Cir. 1995). Rather, it is only necessary for such a party to "establish the note in question, that the non-movant signed the note, that the [moving party] was the legal owner and holder thereof, and

that a certain balance was due and owing on the note." *Id.*

IV.

The dispute in this case arises out of the efficacy, if any, of a promissory note between the parties. Promissory notes are negotiable instruments which are governed in this case by Article 3 of the Uniform Commercial Code ("UCC").[4] *See also* UCC § 3-102(a), UCC § 3-104(a)(e), 810 ILCS § 5/3-102(a); 810 ILCS § 5/3-104(a) and (e).

According to § 3-412 of the UCC, a person who signs a promissory note must satisfy his financial obligation "according to its terms at the time it was issued." The maker owes the indebtedness "to a person entitled to enforce the instrument," who, according to UCC § 3-301, is "(I) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3-309 or 3- 418(d)."

UCC § 3-308(b)[5] instructs its reader that once the authenticity of the maker's signature has been established, a plaintiff who produces producing a note has a right to recover if he can establish his entitlement to enforce the instrument, subject to any valid defenses. *See also, Tuttle v. Rose,* 102 Ill.

---

[4]The State of Illinois, in adopting the Revised UCC, codified its language at 810 ILCS 5/1-101 et. seq. Throughout this order, the Court has made, and will make, reference to the UCC section numbers that are virtually identical to those found in the Illinois code.

[5]§ 3-308(b) provides:

(b) If the validity of signatures is admitted or proved and there is compliance with subsection (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under § 3-301, unless the defendant proves a defense or claim in recoupment. If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff proves that the plaintiff has rights of a holder in due course which are not subject to the defense or claim.

App. 3d 865, 866-67; 430 N.E.2d 356 (1981) ("when the signatures on a note are admitted or established, production of the instrument entitles a holder to recover unless the defendant establishes a defense . . . . The defendant has the burden of establishing any defense, including payment, by a preponderance of the evidence").

Here, the only matters in dispute are the last two elements of the *Tuttle* test. The parties agree that the DCM has produced the instrument and that Wang's signature is valid. Thus, the only points of disagreement are (1) whether the DCM is the party who is entitled to enforce the instrument, and (2) if the Defendants have established any valid defenses.

For purposes of evaluating a motion for summary judgment, the DCM must first satisfy its burden of being the party who is entitled to enforce the Note. Thereafter, it must prove that the Defendants cannot establish a genuine issue of material fact to rebut the DCM's status as a party entitled to enforce the Note.

1.    The Party Who Is Entitled to Enforce the Instrument

DCM contends that, as a "holder" under UCC § 3-301, it is entitled to enforce the Note. The UCC defines a holder as "the person in possession of a negotiable instrument that is payable . . . to an identified person that is the person in possession." UCC § 1-201(21).

Here, the DCM submits that it is "an identified person," pointing to the Note which designates the "DCM Limited" as the intended payee. The Defendants do not agree, contending that the Note is ambiguous as to the identity of the intended payee. Based upon this alleged ambiguity, the Defendants urge the Court to incorporate extrinsic evidence in order to resolve the issue.

When construing the terms of a negotiable instrument, courts are encouraged to examine the entire written contract as well as the circumstances under which it was executed. *Basu v. Stelle,* 237 Ill. App. 3d 113, 118; 603 N.E.2d 1253 (Ill. App. 1992). As with any contract, courts are also

encouraged to look to the express terms of the agreement, which gives the best indication of the parties'

intent. *Liberty Mutual Fire Insurance Co.*, 363 Ill. App. 3d 335, 341; 842 N.E.2d 170 (Ill. App. 2005).

However, no court has the authority to rewrite a contract in order to provide one of the parties with a

better bargain in the transaction. *Barille v. Sears Roebuck and Co.,* 289 Ill. App. 2d 171, 175; 682

N.E.2d 118, 122 (Ill. App. 1997); *See also, Grubb & Ellis Co. v. Bradley Real Estate Trust,* 909 F.2d

1050, 1056 (7th Cir.1987). Whenever the contract terms are clear and unambiguous, a reviewing court

is obligated to enforce them as written. *Barille at 175.* A contract is ambiguous only if the language

used is "reasonably susceptible to more than one meaning." *Susmano v. Associated Internists of

Chicago, Ltd.,* 97 Ill. App. 3d 215, 219; 422 N.E.2d 879 (Ill.App. 1981). The ambiguity in a contract,

if any, is to be determined by the court as a matter of law. *Id.*

The Note, which is the subject matter of this dispute, reads as follows:

> FOR VALUE RECEIVED, the undersigned, STEVE WANG (hereinafter "the Maker"),
> promises to pay to the order of DCM Limited, an entity to be formed (hereinafter "the
> Payee"), Three Million Dollars ($3,000,000.00) with interest which shall accrue at rate
> [sic] of six percent (6.00%) per annum from and after the date hereof. The entire
> indebtedness, including interest, hereunder shall be due and payable immediately upon
> demand.

The Defendants maintain that the portion of the Note which identifies the payee as the "DCM

Limited, an entity to be formed" is inherently ambiguous because "a simple internet search . . . would

reveal the existence of numerous DCM entities throughout the United States."[6] Moreover, they assert

that it would have been impossible to determine the correct payee on June 2, 2001 (one day after the

Note was signed), inasmuch as the DCM Limited Partnership had not been formed.

It is true that the "DCM," as an acronym, could have meanings or represent many different

words. It is also true that the language "an entity to be formed," could suggest a variety of potential

---

[6]The Defendants also argue that the DCM sees itself "as the only entity in the world that
could be the intended payee." *Defendants' Reply Brief at 1.*

business arrangements. But, the mere fact that more than one entity may share the same name as the DCM in this lawsuit does not - by itself - render the Note ambiguous. To accept this argument would call into question every instrument where the payee's name is not totally unique. However, the pertinent inquiry is not whether other entities exist with the words the "DCM Limited" as part of their titles. The question is whether the challenged language is subject to more than one reasonable interpretation under the circumstances of this case. *Bruder v. Country Mut. Ins. Co.,* 156 Ill.2d 179, 193; 620 N.E.2d 355 (Ill. 1993) ("The touchstone in determining whether ambiguity exists . . . is whether the relevant portion is subject to more than one reasonable interpretation, not whether creative possibilities can be suggested. Reasonableness is the key").

As the party who argues that the Note is ambiguous, the Defendants have not advanced another reasonable interpretation for the clause, the "DCM Limited, an entity to be formed." Instead, they have applied speculation and conclusory arguments in an effort to establish their suggested level of ambiguity. To support their ambiguity claim, the Defendants cite UCC § 3-110, which provides in part:

> The person to whom an instrument is initially payable is determined by the intent of the person . . . signing as . . . the issuer of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person.

They also rely heavily on an illustration that is found in Official Comment Number 1 to § 3-110:

> In the case of a check payable to "John Smith," since there are many people in the world named "John Smith" it is not possible to identify the payee of the check unless there is some further identification or the intention of the drawer is determined. Name alone is sufficient under subsection (a), but the intention of the drawer determines which John Smith is the person to whom the check is payable.

The Defendants favorably compare the example in this Official Comment to the payee clause in the instant case. Nevertheless, the name, the "DCM Limited," hardly bears the same level of general usage as does

a name like "John Smith." The clear purpose of this legislative enactment is to address those circumstances where the payee has a fairly common name. Such a situation simply does not exist here. Furthermore, this Official Comment 1 observes that the issue presented in the "John Smith" illustration usually arises where a dispute exists about "the validity of an indorsement in the name of the payee," as could occur when a note has been lost or stolen. UCC § 3-110, Official Comment 1. But here, the DCM is the entity who is in possession of the Note. This fact is significant in the law of negotiable instruments.[7] *See generally, Martin v Martin,* 174 Ill. 371, 372; 51 N.E. 691 (Ill. 1898) ("the possession of an unindorsed note is prima facie evidence of ownership in the holder."). The Court finds that the Note here clearly identifies the DCM as the payee. Therefore, UCC § 3-110 does not apply, and the Court will not consider Wang's verbal assertions as extrinsic evidence with which to prove that he intended the payee to be Tang.

Significantly, the Defendants do not contend that UCC § 3-110 represents an exception to the general rule about when to consider extrinsic evidence in interpreting a contract. However, the main reported opinion which adopts this view arose out of the Tenth Circuit in *Electrical Distributors, Inc. v. SFR, Inc.*, 166 F.3d 1074, 1087 (10th Cir. 1999). In *Electrical Distributors, Inc.*, the court held that the Colorado version of § 3-110 implies an exception to the parol evidence rule, even if a negotiable instrument is clear on its face as to the intended payee. *Id* at 1087. Notwithstanding this nonbinding analysis by the Tenth Circuit, this Court notes that no other case has relied upon *Electrical Distributors* for this principle since its publication nearly ten years ago. Therefore, the Court will not consider any extrinsic evidence with which to interpret the clear terms of the Note in the absence of some showing that

---

[7]The Note was signed by Tom Shao as a witness to the contract. An affidavit, which was attached to the response by the DCM, identifies him as a principal of the D'Long America Corporation during all of the dates and times when it was a viable and operating company. The Defendants have not disputed this fact.

the instrument is ambiguous.

As a separate challenge to the DCM's status as a holder under UCC § 3-301, the Defendants note that this entity did not exist when the parties executed the Note. Thus, the Defendants submit that the DCM could not have been "an identified person" who was contemplated by the parties in their agreement. In its response, the DCM notes that, under the Illinois Uniform Limited Partnership Act ("ULPA") and § 202a of the Illinois Uniform Partnership Act ("UPA"), this entity existed as a general partnership by default before it became an officially registered limited partnership with the British Virgin Island government on June 27, 2001.[8] Therefore, the DCM claims that it had the authority to enter into pre-formation contracts, citing two main cases to support its position. The first case, *AmeriContainer Limited Partnership v. Rankin,* 1994 US App LEXIS 12345 (7th Cir. 1994), offers little insight on the subject. Unlike the situation here, the defendant in *AmeriContainer* neither challenged the plaintiff's existence nor its authority to enter a pre-formation contract. Because the Seventh Circuit had no occasion to address this precise question, there is no reason to transform the silence of the *AmeriContainer* court into an adoptable authority for the position that has been taken by the DCM on this issue.

The second case upon which the DCM relies, *U.S. v. Kuna,* 760 F.2d 813 (7th Cir. 1985), is even less persuasive. *Kuna* involved a criminal prosecution for mail fraud and misconduct in making false statements to the Securities & Exchange Commission. The issues on appeal involved alleged violations of the defendants' due process rights under the Fifth and Sixth Amendments. The fact that the limited partnership conducted its business activities before being formed as an official entity was not relevant to the analysis by Seventh Circuit.

The Defendants correctly note that the DCM's reliance on the Illinois verison of the UPA and

---

[8]The record includes the DCM's Memorandum of Association which contains the date of June 27, 2001 when the limited partnership in the British Virgin Islands became a legal entity.

ULPA is also misplaced inasmuch as this entity was registered by the British Virgin Island government as a limited partnership. Moreover, the DCM has failed to cite any authority which shows that the British Virgin Island government adopted the UPA, the ULPA, or an equivalent legislative enactment during any of the periods of time that are significant to this inquiry. Furthermore, the DCM has also failed to establish that Illinois law would recognize the business dealings of a yet-to-be formed partnership, and if so, whether any unique requirements would apply to non-United States partnerships. On the basis of the pleadings in this cause, there is no reason to believe that the DCM would be entitled to rely upon the protections of the Illinois UPA or the ULPA. Without more, it cannot be said that the DCM limited partnership existed in any form which gave it the authority to adopt the now challenged Note. Because the DCM has not established that it is entitled to prevail as a matter of law on this point, its overall claim for a summary judgment must fail.

2.      <u>The Existence of A Genuine Issue of A Material Fact In Connection With The Defendants' Defenses</u>

As the Defendants point out, even if the Court does find that the DCM is entitled to enforce the Note, this right would be subject to their defenses. UCC § 3-308(b). By virtue of existing law, they are entitled to assert any defense that would be available to them if the DCM had been seeking to enforce a simple contract. UCC § 3-305.

First, the Defendants, citing the alleged absence of good and valuable consideration, assert that the DCM is without legal authority to seek an enforcement of the Note. Thus, it appears that the thrust of their argument centers around the contention that the DCM neither extended a loan to Wang nor suffered any economic detriment involving issues now pending before the Court. In support of this position, the Defendants rely, in part, on Wang's testimony that he only received money from Tang. The DCM disagrees. It argues that the value which was received by Wang came from D'Long America whose assets were ultimately assumed by the DCM.

This argument is supplemented by a reference to the Note which generally states that it was issued "for value received." *DCM's Response at 4.* The DCM cites additional evidence in the form of an affidavit from Tom Shao,[9] who asserts that (1) the company transferred three million dollars to Wang who has acknowledged his receipt of these monies; (2) at the time of the transfer, it was contemplated that the DCM would be formed as a viable entity; (3) a majority of the D'Long America's assets would be transferred to a subsidiary of the DCM; (4) Wang would be asked to sign a Note in the sum of three million dollars which would evidence his indebtedness to the DCM; and (5) the DCM would have the right to collect the funds that had been loaned to Wang. *DCM's Response, Exhibit B.*

Under Illinois law, the only consideration that is required to be given to the maker of a note is "valuable consideration," which consists of "some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Rybak v. Dressler*, 178 Ill. App. 3d 569, 582; N.E.2d 1375, 1383 (Ill. App. 1988), quoting *Limpkin v. Koren*, 392 Ill. 400, 406, 64 N.E.2d 890 (Ill.1946). In an action on a validly executed negotiable instrument, consideration is presumed. *Id.* Thus, the maker of the note bears the burden of rebutting the presumption of consideration for a promissory note, and such rebuttal must be by clear and cogent evidence. *Id.*

Here, a significant factual question exists as to whether the Note is supported by valid consideration. It is true that the Note indicates that Wang received value in exchange for his promise, and that such a clause is generally a sufficient expression of consideration. *Stolzenbach v. Pagoria,* 71 Ill. App. 3d 863, 866; 390 N.E.2d 376 (Ill. App. 1979). It is also true that, under Illinois law, consideration may be furnished by a third party. *See e.g., Chonowski v. Dyke,* 82 Ill. App. 3d 802, 805; 403 N.E.2d 301 (Ill. App. 1980); 3 Williston on Contracts § 7:20 (4th ed.). Yet, the Defendants have raised a factual

---

[9]Shao's affidavit was sworn in the name of Zhi Shao, which presumably represents his legal name, but is more commonly known in the United States as "Tom" Shao. *DCM's Reply, Shao Affidavit, Exhibit B.*

question through Wang's deposition testimony as to whether he received any consideration of value from the DCM or its predecessors. Although the affidavit from Tom Shao casts some doubt on Wang's assertion, it does not conclusively resolve the factual dispute. Therefore, since the DCM has been unable to show the absence of a genuine issue of a material fact on this critical defense, its request for summary judgment must fail.

In its final defense, the Defendants submit that Wang fully discharged his obligation under the Note when he transmitted the total amount of money that was due and owing under the Note to Tang who, in their collective opinion, is the true person entitled to enforce the instrument. *Defendants' Brief at 12-13.* To support their argument, they offer Wang's testimony, wherein he asserts that Tang was the intended payee under the Note. *Id.* at 8.[10] The Defendants also cite Tang's affidavit in which he acknowledges having been fully paid by Wang for all of the monies (to wit, three million dollars) that were due and owing under the Note. *Id, Exhibit E.*[11] In response, the DCM has proffered an opposing affidavit from Tom Shao who avers that Wang acknowledged his receipt of the three million dollars from the D'Long America.

The Defendants correctly observe that under UCC § 3-602, a party's obligation is discharged if a full payment is made "to a person entitled to enforce the instrument." Notwithstanding the correctness

---

[10]The DCM, relying upon the language within the Note, challenges the validity of this argument, noting that Tang was neither a party to the agreement nor listed as a payee in the instrument.

[11]The Defendants also attach a documentation to Exhibit "E" in their responsive brief, which purports to show that Wang transferred three million dollars to Tang's bank account. However, this paperwork is inconclusive, in that it neither contains nor makes reference to the names of Wang or Tang. Moreover, this attached documentation fails to establish that the identified transaction involved (1) the issues now pending before this Court, (2) the parties to this lawsuit, or (3) their respective bank accounts. The transfer of funds suggests that it was apparently made from one corporation ("GRI International Inc.") to another entity ("Centralize Account of Police Office, DuBei Province") by using the Citibank of New York as an intermediary.

of this statutory citation, they have failed to establish that Tang is such a person who satisfies this UCC definition. Moreover, there is nothing in the record which suggests that Tang was a holder, a non-holder in possession with the rights of a holder, or a person otherwise who is entitled to enforce the Note under § 3-309 or § 3-418. Simply put, the Defendants have not demonstrated how the payment of any funds to Tang satisfied the requirements of UCC § 3-602 and § 3-301. Therefore, the Defendants have not met their burden of proving this defense by a preponderance of the evidence. *Tuttle v. Rose, supra* at 867. Nevertheless, with recognition that a genuine issue remains as to a material fact in this case (i.e., the identity of the person or entity from whom Wang borrowed the money), the motion for summary judgment by the DCM must fail.

## V.

At the outset of this order, the Court noted that the Defendants had filed their own motion for the entry of a summary judgment. These arguments, which were submitted in support of their quest for dispositive relief, are virtually the same as those that were raised by them in the opposition papers to the DCM's motion for a summary judgment. In essence, they assert that the DCM cannot overcome their asserted defenses which, in turn, preclude it from being able to seek the enforcement of the challenged instrument. Inasmuch as the Court has found the existence of a genuine issue of a material fact regarding each of these issues, the Defendants' cross-motion must also be denied.[12]

However, the Defendants have raised additional arguments which warrant separate consideration. First, they submit that the DCM's quantum meruit claim lacks legal sufficiency as a matter of law. In order to recover under this theory, an aggrieved party must demonstrate that (1) it performed a service which benefitted the defendants; (2) it did not perform the service gratuitously; (3) the defendants

---

[12]To the extent that the Defendants also argue that the DCM did not exist when the Note was executed, they have likewise failed to provide good and sufficient legal authority which would establish their entitlement to prevail on this point as a matter of law.

accepted the service; and (4) no contract existed to prescribe payment for the service. *Installco Inc. v. Whiting Corp.,* 336 Ill. App. 3d 776, 781; 784 N.E.2d 312 (Ill. App. 2002).

In its complaint, the DCM alleges that (1) it tendered three million dollars to the Defendants toward the purchase of an interest in Eurac Holdings, and (2) the Defendants accepted the monies, all of which ostensibly gave rise to an implied contract. The Defendants challenge this assertion, contending that the DCM never directly loaned any funds to Wang.

Notwithstanding its arguments, the DCM has not proffered any evidence with which to support the contention that it provided a non-gratuitous service to benefit the Defendants. To the contrary, its own pleading acknowledges that "DCM Limited never provided the defendants with . . . three million dollars." *DCM's Response at 4.* In summary, the DCM has not produced any persuasive argument in support of its quantum meruit claim. Therefore, the Court grants a summary judgment in favor of the Defendants on this issue.

The Defendants also seek summary judgment relief on the DCM's claim for unjust enrichment. This equitable theory of recovery is based on the existence of an implied contract. In order to sustain a claim for unjust enrichment, a plaintiff must prove that the defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment. *Ramirez v. Smart Corp.* 371 Ill. App.3d 797, 808-09; 863 N.E.2d 800 (Ill. App. 2007). As noted above, the DCM has presented no evidence to show that it provided any of the Defendants with a valuable benefit. At most, the transactions by the DCM demonstrate that all monies were paid to the Defendants by the D'Long America or some other DCM predecessor. In response to the Defendants' motion, the DCM has merely argued that this issue is fact-intensive, which renders it not suitable for resolution by summary judgment. In order to preserve this claim, the DCM or any other aggrieved person must present some form of evidence which satisfactorily demonstrates the existence of a genuine issue of a material fact for trial. Because the DCM has not carried

its burden on its unjust enrichment claim, the Court must grant the Defendants' request for a summary judgment on this unjust enrichment claim.

Finally, the Defendants urge the Court to dismiss all of the claims against the two corporate entities in this case because there is no evidence that any of these Defendants ever received any loan proceeds or were parties to the Note. The DCM opposes the suggested dismissal of these corporate Defendants by alluding to the deposition testimony of Tom Shao who averred that Wang might use the three million dollar loan to enable Midwest Air and/or MAT Automotive to acquire a company in the United Kingdom. Moreover, the DCM points to the complaint, in which it asserts that Wang acted as an agent on behalf of Midwest Air and MAT Automotive. *DCM's Response, Exhibit C.* In its application for a summary judgment, the Defendants have not presented any credible evidence to defeat the claims against them. When making a request for a summary judgment, the burden rests with the moving party to prove the absence of a genuine issue of a material fact. *Anderson, supra.* Because the Defendants have failed to satisfy their burden on this issue, their motion for a summary judgment on this ground must be denied.

VI.

For the reasons that have been set forth above, the motion for summary judgment by the DCM must be, and is, denied in its entirety. Furthermore and for the reasons that have been set forth above, the Defendants' motion for summary judgment must be, and is, granted in part and denied in part. The Court finds that genuine issues of a material fact exist with regard to Count I of the complaint. Therefore, that portion of the Defendants' motion for summary judgment must be, and hereby is, denied.

However, the Court must, and does, dismiss the DCM's claims in Counts II and III of the

complaint, inasmuch as it has failed to identify a genuine issue of a material fact on either of these counts.

IT IS SO ORDERED.

Dated:  May 6, 2008                    s/ Julian Abele Cook, Jr.
        Detroit, Michigan              JULIAN ABELE COOK, JR.
                                       United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on May 6, 2008.

                                       s/ Kay Alford
                                       Case Manager